# DION&
# GOLDBERGER

A T T O R N E Y S   A T   L A W

Samuel A. Dion
*Member of PA and NJ Bar*

Benson I. Goldberger
*Member of PA Bar*

Philadelphia Office:
1616 Walnut Street
Suite 1100
Philadelphia, PA 19103

(215) 546 6033
Toll Free (800) 346 6726
Fax (215) 546 6269
Website www.dionandgoldberger.com

New Jersey Office:
40 Chelsea Court
Atlantic City, NJ 08401

August 18, 2010

United States District Court
For the District of New Jersey
Office of the Clerk of Court
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets Room 1050
Camden, NJ 08101

Re:   Tapal Sarker vs. Trump Entertainment Resorts, Inc. d/b/a Trump Plaza Hotel and Casino
      Filing of a Civil Action Complaint

Dear Sir/Madam:

    Enclosed please find an original and a copy of the complaint in the above-referenced matter including a check for $350.00, a PDF, and a self-addressed stamped envelope. Kindly time-stamp the copy and send it back to us in the envelope.

    Thank you for your courtesy and assistance in this matter.

Very truly yours,

Sarah Heidke
Legal Assistant

Enclosure w/SASE
Via regular mail

RECEIVED

AUG 1 9 2010

%JS 44   (Rev. 12/07, NJ 5/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Tapal Sarker

**DEFENDANTS**
Trump Entertainment Resorts, Inc. d/b/a Trump Plaza Hotel and Casino

**(b)** County of Residence of First Listed Plaintiff  **Atlantic**

County of Residence of First Listed Defendant  **Atlantic**

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

Dion & Goldberger, 1616 Walnut St., Ste. 1100, Philadelphia, PA 19103, (215) 546-6033, samueldion@aol.com

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ❏ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ❏ 2  U.S. Government Defendant
- ❏ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business in Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 362 Personal Injury - | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Med. Malpractice | ❏ 625 Drug Related Seizure | 28 USC 157 | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | Liability | ❏ 365 Personal Injury - | of Property 21 USC 881 | | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Product Liability | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 460 Deportation |
| & Enforcement of Judgment | Slander | ❏ 368 Asbestos Personal | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 470 Racketeer Influenced and |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Injury Product | ❏ 650 Airline Regs. | ❏ 830 Patent | Corrupt Organizations |
| ❏ 152 Recovery of Defaulted | Liability | Liability | ❏ 660 Occupational | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| Student Loans | ❏ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❏ 490 Cable/Sat TV |
| (Excl. Veterans) | ❏ 345 Marine Product | ❏ 370 Other Fraud | ❏ 690 Other | | ❏ 810 Selective Service |
| ❏ 153 Recovery of Overpayment | Liability | ❏ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 380 Other Personal | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | Property Damage | Act | ❏ 862 Black Lung (923) | ❏ 875 Customer Challenge |
| ❏ 190 Other Contract | Product Liability | ❏ 385 Property Damage | ❏ 720 Labor/Mgmt. Relations | ❏ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Product Liability | ❏ 730 Labor/Mgmt.Reporting | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | Injury | | & Disclosure Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❏ 892 Economic Stabilization Act |
| ❏ 210 Land Condemnation | ❏ 441 Voting | ❏ 510 Motions to Vacate | ❏ 790 Other Labor Litigation | ❏ 870 Taxes (U.S. Plaintiff | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ☒ 442 Employment | Sentence | ❏ 791 Empl. Ret. Inc. | or Defendant) | ❏ 894 Energy Allocation Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/ | **Habeas Corpus:** | Security Act | ❏ 871 IRS—Third Party | ❏ 895 Freedom of Information |
| ❏ 240 Torts to Land | Accommodations | ❏ 530 General | | 26 USC 7609 | Act |
| ❏ 245 Tort Product Liability | ❏ 444 Welfare | ❏ 535 Death Penalty | **IMMIGRATION** | | ❏ 900 Appeal of Fee Determination |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | | Under Equal Access |
| | Employment | ❏ 550 Civil Rights | ❏ 463 Habeas Corpus - | | to Justice |
| | ❏ 446 Amer. w/Disabilities - | ❏ 555 Prison Condition | Alien Detainee | | ❏ 950 Constitutionality of |
| | Other | | ❏ 465 Other Immigration | | State Statutes |
| | ❏ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from another district (specify)
- ❏ 6 Multidistrict Litigation
- ❏ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

*FMLA*

Brief description of cause:

AUG 19 2010

## VII. REQUESTED IN COMPLAINT:

- ❏ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**  ☒ Yes  ❏ No

## VIII. RELATED CASE(S)   (See instructions)

JUDGE _____  DOCKET NUMBER _____

Explanation:

DATE _____

SIGNATURE OF ATTORNEY OF RECORD

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| TAPAL SARKER | : | |
| | : | No. |
| VS. | : | **JURY TRIAL DEMANDED** |
| TRUMP ENTERTAINMENT RESORTS, INC. d/b/a TRUMP PLAZA HOTEL AND CASINO | : | |

**CIVIL ACTION COMPLAINT**

1.     The Plaintiff, Tapal Sarker, is an adult individual who resides at 210 North Texas Avenue, Atlantic City, NJ 08401.

2.     The defendant, Trump Entertainment Resorts, Inc. d/b/a Trump Plaza Hotel and Casino, is a corporation which conducts business in the State of New Jersey and has a place of business located at The Boardwalk at Mississippi, Atlantic City, NJ 08401.

AUG 19 2010

Jurisdiction

3.   This matter has federal jurisdiction pursuant to the Family and Medical Leave Act of 1993 (hereinafter "FMLA"), 29 U.S.C. Section 2601, et seq.

Facts

4.    Plaintiff was first employed by defendant on May 1, 2006 as a Bar Porter.

5.    Between January 2, 2009 and March 29, 2009, plaintiff was on approved personal leave to visit family members in Bangladesh.   (Exhibit A).

6.   On March 10, 2009, plaintiff was diagnosed with enteric fever by Dr. Shankha Greeb Sarker, M.B.B.S., a general physician in Bangladesh.

7.   On March 12, 2009, plaintiff faxed a "Certification of Health Care Provider form" to defendant.   (Exhibit B).   This Certification was dated March 10, 2009 and was signed by Dr. Sarker, and it confirmed the plaintiff's diagnosis of enteric fever and indicated that plaintiff could return to work on May 10, 2009.

8.   On March 18, 2009, defendant responded to plaintiff's transmittal of his Certification with a letter requesting plaintiff to submit a "Certification of Health Care Provider form" to defendant by April 1, 2009. (Exhibit C).

9.    The March 18, 2009 letter was mailed to plaintiff's home despite that he was in Bangladesh.

10.   Being that plaintiff had already submitted a "Certification of Health Care Provider form" to defendant on

March 12, 2009, plaintiff had already complied with the requirement of defendant's March 18, 2009 letter.

11.  On May 2, 2009, plaintiff returned from Bangladesh and found the March 18, 2009 letter in his mail.  Also in the same batch of mail was a letter dated March 17, 2009 from defendant which requested plaintiff to return to work on April 1, 2009. (Exhibit D). This was the very first time that plaintiff had seen the defendant's March 18, 2009 and March 17, 2009 letters.

12.  On or about May 5 or 6, 2009, plaintiff went into defendant's premises and brought his March 10, 2009 Certification to his supervisor Heider and indicated that he was ready to return to work per the certification that he had previously submitted.  Heider directed plaintiff to speak to his other supervisor Jennifer when she returned to the workplace.

13.  On or about May 6, 2009, plaintiff went to the post office to pick up a certified letter that the mailman had attempted to deliver to his home while he was away in Bangladesh. Plaintiff was shocked to see a letter dated April 9, 2009 notifying him that he was terminated for purported "voluntary resignation." (Exhibit E).

14.  Thus from March 12, 2009 through May 10, 2009, plaintiff suffered from medical conditions that qualify as a serious health condition pursuant to the FMLA.

15.  The defendant was, at all times material hereto, an

"employer" pursuant to the FMLA in that it was engaged in commerce and employed 50 or more employees.

16.  On March 12, 2009, plaintiff was an eligible employee under the FMLA because he was employed by defendant and its predecessors for more than one year and he worked at least 1250 hours in the 12 months prior to March 12, 2009.  On March 12, 2009, plaintiff was entitled to take up to 12 work weeks of FMLA leave in that he had not taken any FMLA leave in the previous 12 months.

17.  Between about March 12, 2009 and May 10, 2009, plaintiff took protected leave for enteric fever (Typhoid). Plaintiff provided notice of the aforesaid intermittent FMLA leave as soon as practicable and he made diligent and good faith efforts to deliver a requested certification within the prescribed time period pursuant to FMLA Regulation 29 CFR 825.305 (b).

## COUNT 1- FMLA

18.  Plaintiff incorporates by reference paragraphs 1-17 below.

19.  The doctors that treated plaintiff in December 2007 were health care providers as defined by the FMLA.

20.  Plaintiff was diagnosed with a serious health condition which rendered him unable to perform the functions of his

position, and he was placed on a plan of continuing treatment by his health care providers including prescription medication and bed rest.

21.  On or about April 9, 2009, plaintiff's employment was terminated by defendant purportedly because he failed to return to work by April 1, 2009.  The defendant's proffered reason for plaintiff's termination was untrue and/or unlawful, because plaintiff had made the requisite diligent and good faith efforts request FMLA leave and to provide a Certification pursuant to FMLA.  Moreover, defendant had no reason to believe that plaintiff was not entitled to FMLA leave because it received the completed "Certification of Health Care Provider form" before April 2, 2009, as it requested in its letter date March 18, 2009.

22.  Defendant also acted in an unreasonable manner by ignoring the fact that the plaintiff had submitted a "Certification of Health Care Provider form" to support his request for FMLA leave on March 12, 2009.

23.  Defendant and its agents violated the FMLA by terminating plaintiff because he exercised his rights under the FMLA and took FMLA leave.

24.  Defendant and its agents violated the FMLA by refusing to permit plaintiff to return from FMLA leave.

25.  Defendant and its agents violated the FMLA by preventing him from returning to work after his FMLA leave ended.

26. As a direct result of defendant's unlawful termination of plaintiff's employment as described herein above, plaintiff has suffered and will continue in the future to suffer actual damages in the form of lost pay, lost bonuses, lost benefits and other financial losses. Plaintiff has engaged in great efforts to mitigate his damages by searching for new employment, but he has been unsuccessful in his efforts to find equivalent employment to date.

27. Plaintiff is entitled to liquidated damages in an amount which is 2 times actual damages because defendant and its agents intentionally, and/or in bad faith, violated the FMLA.

28. Plaintiff is entitled to recover reasonable attorneys fees and costs associated with the prosecution of this lawsuit.

29. Plaintiff is entitled to recover interest and other economic damages on any award of damages he recovers in this matter.

30. Plaintiff is entitled to reinstatement of his employment.

WHEREFORE, plaintiff demands that judgment be entered in his favor against defendant for lost pay, lost bonuses, lost benefits, other financial losses, liquidated damages equal to 2 times actual damages, attorneys fees, costs, interest on any such award, reinstatement of employment and any other relief that this Honorable Court deems to be fair and proper.

/s/ Samuel A. Dion

Samuel A. Dion, Esq.
Dion & Goldberger
1616 Walnut Street
Suite 1100
Philadelphia, PA 19103
215-546-6033
Samueldion@aol.com
Attorney for Plaintiff

# EXHIBIT A

# Memorandum

**To:**   Tapal Sarker

**CC:**   Tony Sanza, Cheryl Brantley

**From:** Jennifer Nikander

**Date:**  12/2/2008

**Re:**   Personal Leave

---



Tapal, you recently submitted to me a request for a personal leave of absence beginning 12/29/08 – 3/29/09. Knowing that New Year's Eve is one of our busiest nights of the year I am denying your request. However, I can grant leave beginning 1/2/09 and you would need to return 3/16/09. If you wish to take this time please resubmit new leave of absence paperwork reflecting the authorized dates.

If you have any questions please feel free to reach out to me.

1

# EXHIBIT B

SUCCESSFUL FAX

The following fax
Customer No.  : 66661
Reference No. : 168678024I
Billing Code  : 66661
Sent At       : 12/03/2009 09:07:11 AM (GMT-5:00)
Pages         : 2
Duration      : 258
Your Fax To   : 1609416138

# Certification of Health Care Provider

This form must be filled out completely. The patient may be requested to get a second opinion from another health care provider.

1. <u>Topal Sarcher</u>      <u>102718</u>
   Employee's Name           Employee #           Patient's Name (if not employee)

   **DD**/MM/YY.    Relationship to Employee

2. 1st Day of Lost Time _____ Date Condition Commenced <u>10/3/09</u>   Estimated Date of Return <u>10/5/09.</u>

3. The list below describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

   A "Serious Health Condition" means an illness, injury, impairment, or physical or mental condition that involves one of the following:

   _____ 1. **Hospital Care:** Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

   _____ 2. **Absence Plus Treatment:** A period of incapacity[3] of more than three consecutive calendar days (including any subsequent treatment or period of incapacity[4] relating to the same condition), that also involves: (a) Treatment[5] two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g. physical therapist) under orders of, or on referral by, a health care provider, or (b) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment[6] under the supervision of the health care provider.

   _____ 3. **Pregnancy:** Any period of incapacity[7] due to pregnancy, or for prenatal care.

   _____ 4. **Chronic Conditions Requiring Treatment:** A chronic condition which: (a) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider; (b) Continues over an extended period of time (including recurring episodes of a single underlying condition); and (c) May cause episodic rather than a continuing period of incapacity[8] (e.g., asthma, diabetes, epilepsy, etc.).

   _____ 5. **Permanent/Long-term Conditions Requiring Supervision:** A period of incapacity[9] which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

   _____ 6. **Multiple Treatments (non-Chronic Conditions):** Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity[10] of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories: <u>Pt. has been suffering from fever from 4/3/09 & abdominal pain with loose motion. After clinical examination He was diagnosed a case of Enteric fever. He came above those complaints on 10/3/09. He is under my treatment He needs forty five days to six to close for complete cure.</u>

5. Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in Item 7)? _____ YES <u>NO</u> NO

   a. If yes, give the probable duration: _____

6. If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated[2] and the likely duration and frequency of episodes of incapacity[2]: _____ <u>N/A.</u>

---

1. Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

2. "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

3. Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

4. A regimen of continuing treatment includes, for example, a course of prescription medication (e.g. an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bedrest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.     20006

'7.   If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments: *N/A* .

8.   If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any: _____ *N/A* .

9.   If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments: _____ *N/A*

10.  If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment): *Msi Promycins (500mg) b.i.d.* *Pantoprazole (20mg) b.i.d.; Tab Puracetams (800mg), Tab Multivit*

11.  Is employee able to perform work of any kind? _____ YES *NO* NO (If NO skip item #12.)

12.  If able to perform some work, is employee unable to perform one or more of the essential functions of the employee's job (the employee or employer should supply you with information about the essential job functions)? _____ YES _____ NO If yes, please list the essential functions the employee is unable to perform and how long they will be unable to perform those functions: _____

13.  If neither 11 or 12 applies, is it necessary for the employee to be absent from work for treatment? ✓ YES _____ NO

**FOR CERTIFICATION RELATING TO CARE FOR THE EMPLOYEE'S SERIOUSLY-ILL FAMILY MEMBER, COMPLETE ITEMS 14-17 BELOW AS THEY APPLY TO THE FAMILY MEMBER.**

14.  If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation? _____

15.  If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery? _____

16.  If the patient will need care only intermittently or on a part time basis, please indicate the probable duration of this need:

**TO BE COMPLETED BY THE EMPLOYEE NEEDING FAMILY LEAVE TO CARE FOR A FAMILY MEMBER.**

17.  State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule.

Employee Signature: *Tapal Sarker*                     Employee # *102718*

Date *10-3-2009*

| ACKNOWLEDGEMENT | |
|---|---|
| Physician/Practitioner Name: DR. SHANKHA GREEB SARKER MBBS | Telephone: *0819-398251.* |
| REG NO. A 34943 | |
| Type of Practice: *General Physician.* | |
| Address: DR. SHANKHA GREEB SARKER MBBS | |
| Physician/Practitioner Signature: *Shankh* | Date Signed: *10/3/09 .* |

Must be personally signed by Physician/Practitioner

Revised 1/98  20006

# EXHIBIT C

# T R U M P

### CASINO RESORTS

March 18, 2009

Tapal Sarker
1 Liberty Terrace
Atlantic City, NJ 08401

Dear Tapal,

The benefit office is in receipt of your Request for Leave of Absence extension starting March 17, 2009.

Company policy requires that employees requesting leave for their own serious health condition must submit **a Certification of Health Care Provider form, completed in full, by their healthcare provider**.

You have 15 days from this date of this notice to provide the above requested documentation. I have enclosed for your convenience a Certification of Health Care Provider form.

**Accordingly, if your department does not receive the above requested documentation by April 1, 2009, any absence(s) or tardiness is subject to disciplinary action accordance with the Trump Absenteeism and Tardiness Policy.**

If you have any questions, please feel free to call Christine McCallister at 609-449-6802 or the Benefit Office at 609-449-5800.

Sincerely,
Benefit Office

c: Department
   Employee Relations
   Benefit file

TRUMP TAJ MAHAL
*Atlantic City, NJ*

TRUMP MARINA
*Atlantic City, NJ*

TRUMP PLAZA
*Atlantic City, NJ*

1000 BOARDWALK AT VIRGINIA AVENUE, ATLANTIC CITY, NEW JERSEY 08401 · 609-449-1000

# EXHIBIT D



March 17, 2009

Tapal Sarker
1 Liberty Terrace
Atlantic City, NJ 08401

Dear Tapal,

This letter is to serve as a reminder that your personal leave of absence expires on March 29, 2009. We would like for you to report to the Benefits office at least five days before your leave expires to receive a work clearance slip. You will be expected to return to work on April 1, 2009.

Any questions or concerns please contact me.

Sincerely,

Jennif Nikand

Jennifer Nikander
Beverage Manager
(609)441-6025

Cc: Cheryl Brantley
       Benefits

Boardwalk at Mississippi Ave. • Atlantic City, N.J. 08401 • 609-441-6000

# EXHIBIT E



# TRUMP PLAZA
### HOTEL AND CASINO

April 9, 2009

Tapal Sarker
1 Liberty Terrace
Atlantic City, NJ 08401

Tapal,

Several weeks ago you were mailed a notification reminding you of your scheduled date of return from your personal leave of absence. We advised you that if you did not contact us by March 27, 2009 it would be considered a voluntary resignation. As of the date of this letter we have not heard from you. Therefore we are terminating your employment with Trump Plaza effective March 28, 2009 as a voluntary resignation, no notice.

Sincerely,

Jennifer Nikander
Beverage Manager

Cc: Tony Sanza
    Cheryl Brantley
    Benefits

AUG 1 9 2009