UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TAPAL SARKER, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 10-4243 |
| v. | : | MEMORANDUM OPINION & ORDER |
| TRUMP ENTERTAINMENT RESORTS, INC. d/b/a TRUMP PLAZA HOTEL AND CASINO, | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's motion for summary judgment. Because credibility determinations are necessary to resolve this matter, Defendant's motion will be denied.

**Background**

Plaintiff Tapal Sarker is a former employee of Defendant Trump Entertainment Resorts, Inc. d/b/a Trump Plaza Hotel and Casino. He brought suit against his former employer pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 ("FMLA"), alleging that he was terminated in violation of the Act.

Plaintiff was hired by Defendant on May 1, 2006 as a Bar Helper. (Rudley Cert., Ex. A.) He was approved for personal leave of absence from January 2, 2009 to March 16, 2009 to visit family members in Bangladesh. (Compl., Ex. A; Rudley Cert., Ex. C.) Plaintiff alleges that on March 12, 2009, he faxed Defendant a Certification of Health Care Provider form, dated March 10, 2009, indicating that Plaintiff had been diagnosed with enteric fever, and would not be able to return to work until May 10, 2009. (Compl., Ex. B.) The form was signed by Dr. Shanka Greeb Sarker, M.B.B.S., General Physician. (Id.) Apparently in response, on March 18, 2009, Defendant mailed a letter to Plaintiff's

home address in Atlantic City stating that company policy required Plaintiff to submit, within 15 days, "a Certification of Health Care Provider form, completed in full" in support of his request for an extension of leave. (Compl., Ex. C.) The letter from Defendant's Benefit Office further stated, "if your department does not receive the above requested documentation by April 1, 2009, and absence(s) or tardiness is subject to disciplinary action . . . ." (Compl., Ex. C.) A March 17, 2009 letter from Defendant addressed to Plaintiff's Atlantic City address purported to remind Plaintiff that his leave of absence was set to expire on March 29, 2009, and he would be expected to return to work on April 1, 2009. (Compl., Ex. D; Rudley Cert., Ex. B.) On April 9, 2009, Defendant sent a letter to Plaintiff's Atlantic City address indicating that Defendant had not heard from Plaintiff, and was therefore terminating his employment as a voluntary resignation effective March 28, 2009. (Compl., Ex. E.) Plaintiff alleges that he received the April 9, 2009 letter on May 6, 2009. (Compl., ¶ 13.)[1]

In seeking summary judgment, Defendant argues that Plaintiff was terminated for failure to return to work after a period of approved personal leave of absence; he was not approved for FMLA leave because Defendant suspected his request was fraudulent. Citing to a computer printout labeled "Complete Reservation Transaction in Respect of Tapal Sarker," (Rudley Cert., Ex. E), Defendant has argued that "Plaintiff purchased an airline ticket with a departure date of January 1, 2009 and a return date of May 1, 2009." (Stmt. Facts, ¶ 4.) Defendant also takes issue with the circumstance that Plaintiff had taken a Medical Provider Certification form, as well as Defendant's Benefits Office fax number, with him to Bangladesh. (Id., ¶5-6.)

---

[1] Plaintiff returned to the United States on May 2, 2009. (Compl., ¶ 11.) On May 5 or 6, 2009, Plaintiff brought his March 10, 2009 Certification to his supervisors at Defendant's premises. (Id., ¶ 12.)

**Discussion**

**A. Summary Judgment Standard**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.;

Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.   The Family and Medical Leave Act**

   1.   Generally

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, ("FMLA") was enacted to provide leave for workers whose personal or medical circumstances require

4

that they take time off from work in excess of what their employers are willing or able to provide.  Victorelli v. Shadyside Hosp., 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101). The Act is intended "to balance the demands of the workplace with the needs of families . . . by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition." Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).

     The FMLA guarantees eligible employees 12 weeks of leave in a one-year period following certain events: a serious medical condition; a family member's serious illness; the arrival of a new son or daughter; or certain exigencies arising out of a family member's service in the armed forces.  29 U.S.C. § 2612(a)(1). During the 12 week leave period, the employer must maintain the employee's group health coverage. § 2614(c)(1). Leave must be granted, when "medically necessary," on an intermittent or part-time basis. § 2612(b)(1). Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent. § 2614(a)(1). The Act makes it unlawful  for an employer to "interfere with, restrain, or deny the exercise of" these rights, § 2615(a)(1); to discriminate against those who exercise their rights under the Act, § 2615(a)(2); and to retaliate against those who file charges, give information, or testify in any inquiry related to an assertion of rights under the Act, § 2615(b).  Violators are subject to payment of certain monetary damages and appropriate equitable relief, § 2617(a)(1). The Act provides for liquidated (double) damages where wages or benefits have been denied in violation of the Act, unless the defendant proves to the court that the violation was in good faith.

To evoke the requirement for unpaid FMLA leave, an eligible employee need not specifically assert his rights under the Act, or even mention the Act itself. 29 C.F.R. § 825.208(a)(2). All that is required is that the employee state an FMLA qualified reason for the leave. Id. "[T]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'" Holpp v. Integrated Commc'ns Corp., Civ. No. 03-3383, 2005 WL 3479682, at *5 (D.N.J. December 20, 2005) (quoting Brohm v. JH Props., 149 F.3d 517, 523 (6th Cir. 1998)) (emphasis added). Moreover, 29 C.F.R. § 825.302(c) requires an employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c) (2006). "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA qualifying, based on information provided by the employee." Id. § 825.208(a). The designation generally must be made before the leave starts, but only in limited circumstances can leave be designated as FMLA-protected after it has ended, usually within two business days. Id. § 825.208(e).

Pursuant to the FMLA and its implementing regulations, "when an employee provides notice of the need for FMLA leave, the employer shall provide the employee with notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1). This notice should contain, for example, whether the leave counts against the FMLA entitlement, whether the employee is required to provide medical certification of a serious health condition and the consequences for failure to do so, any requirement

6

to provide a fitness for duty certificate upon restoration of employment, and the right to the same position at the end of the leave.  Id.  The employer should request certification, in most cases, prior to or immediately after leave commences, but may do so some time thereafter if there is reason to question the reason for the leave or its duration.  Id. § 825.305.

Although employers may adopt or retain leave policies more generous than any policies that comply with the requirements under the FMLA, 29 U.S.C. § 2653, the "rights established by the Act may not be diminished by any employment benefit program or plan," 29 C.F.R. § 825.700.

### 2.  Interference

An employer interferes with the exercise of an employee's right to unpaid leave if it fails to provide the employee who gives notice of the need for leave a written notice detailing the specific expectations and obligations of the employee and explaining any consequence of a failure to meet these obligations.  See 29 U.S.C. § 2615(a)(1); Parker v. Hahnemann University Hosp., 234 F. Supp. 2d 478, 483 (D.N.J. 2002).  Further, conduct discouraging employees from taking FMLA leave has been held to constitute interference, even if the employee ends up taking the leave.

### 3.  Retaliation

Pursuant to the FMLA, "[i]t [is] unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  It follows that the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2) (1993).

But where an employee is discharged during a protected leave for a reason unrelated to the leave, there is no right to reinstatement. Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 141 (3d Cir. 2004) (citing 29 C.F.R. § 825.216(a)(1)).

In cases alleging retaliation in the employment setting, courts generally apply the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001). The first step under McDonnell Douglas, is to establish a prima facie case of retaliation for requesting FMLA leave. 411 U.S. at 802. To carry this initial burden in a retaliation case, a plaintiff must show that: (1) she engaged in protected activity (taking FMLA leave); (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the leave. Cognoscenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146-47 (3d Cir. 2004). A causal connection may be established by circumstantial evidence, such as temporal proximity, a pattern of antagonism, and pretext. Kachmar v. SunGard Dadt Sys., 109 F.3d 173, 177 (3d Cir. 1997). This indirect evidence is to "be considered with a careful eye to the specific facts and circumstances encountered." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279, n.5 (3d Cir. 2000).

Once a prima facie case is established, the burden of persuasion shifts back to the defendant to put forth "a legitimate, nondiscriminatory reason" for the employment decision. Id.; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant succeeds in demonstrating that the decision was based on a non-discriminatory reason, Plaintiff has the burden of proving by a preponderance of the evidence that the stated reason was pretextual. Burdine, at 260; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

In evaluating employment cases, the task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992). Thus, to establish pretext, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the . . . plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employers's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer' did not act for [the asserted] nondiscriminatory reasons." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir.1994) (internal citations omitted); Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 551 (citing Fuentes, 32 F.3d at 764-65).

"[F]iring an employee for [making] a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009). On the other hand, an employer is not required to suspend its termination proceedings just because the employee requests medical leave. See, e.g., Clark County Sch. Dist., 532 U.S. at 272. "A contrary holding might impede employers from permissible terminations and encourage employees aware of an impending termination to attempt to create their own 'severance package.'" Windfelder v. The May Dep't Stores Co., 93 Fed. Appx. 351, 355 (3d Cir. 2004).

4.   <u>Analysis</u>

Beginning October 31, 2007, Plaintiff took approved FMLA leave to care for his father in Bangladesh. (Rudley Cert., Ex. H.) He then extended his leave, which was set to expire in January 2008, due to his own alleged serious health condition, enteric fever with hepatitis. (Rudley Cert., Ex. I.) At that time, Defendant had approved the extension of FMLA leave through April 13, 2008. (Stmt. Facts, ¶ 8-9.) Plaintiff subsequently took an approved personal leave of absence beginning January 2, 2009 to visit family members in Bangladesh. During that period of leave, there is no question that he notified Defendant of his need for FMLA leave by providing a Certification of Health Care Provider form, dated March 10, 2009, indicating that he had again been diagnosed with enteric fever. Whether the March 2009 request for FMLA leave was fraudulent is a question of fact to be decided upon credibility determinations, not a matter to be decided on summary judgment; nor is the issue of whether Defendant properly denied Plaintiff FMLA leave at that time an issue for determination on summary judgment. <u>See Lichtenstein v. University of Pittsburgh Medical Center</u>, — F.3d —, 2012 WL 3140350 (3d Cir. 2012) (reversing grant of summary judgment where there existed genuine issues of material fact as to whether: (1) employee's notice was adequate under the FMLA, (2) employee's invocation of FMLA rights was a negative factor in her termination, and (3) employer's proffered justification for its action was mere pretext for retaliation).

## Conclusion

For these reasons,

IT IS ORDERED on this <u>1st</u> day of October, 2012 that Defendant's motion for summary judgment is hereby <u>DENIED</u>.

s/ Joseph H. Rodriguez<br>HON. JOSEPH H. RODRIGUEZ,<br>U.S.D.J.